IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN WALKER,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JAIME SORBER** *et al.,* | : | |
| *Defendants* | : | **No. 21-3477** |

## MEMORANDUM

PRATTER, J.                                                                                              SEPTEMBER 29, 2022

Shawn Walker alleges that various of a state prison's responses to the COVID-19 global pandemic violated his constitutional rights. The prison officials move to dismiss Mr. Walker's complaint, arguing that none of his allegations state a claim upon which relief can be granted. But while many of Mr. Walker's allegations fail to state a claim, at least some allegations are sufficient to survive a motion to dismiss. Therefore, the Court grants the defendants' motion in part and denies it in part.

### BACKGROUND

Plaintiff Shawn Walker is a state inmate presently incarcerated at the State Correctional Institution at Phoenix ("SCI-Phoenix") in Skippack Township, Montgomery County Pennsylvania. Like many prisons around the country, SCI-Phoenix was forced to confront the global COVID-19 pandemic and take steps to ensure the safety of its staff and inmate population. Mr. Walker's complaint takes issue with certain of the means and methods SCI-Phoenix deployed in responding to the COVID-19 pandemic. He has sued the superintendent of SCI-Phoenix, Jaime Sorber, in both his individual and official capacities, the former secretary of the Pennsylvania Department of Corrections, John Wetzel, in his individual capacity, and the current Secretary of the Pennsylvania

Department of Corrections, George Little, in both his individual and official capacities. At the motion to dismiss stage, the Court accepts as true all of the facts alleged in Mr. Walker's complaint.

In 2020, SCI-Phoenix went into a lockdown in response to the COVID-19 pandemic. In the summer of 2021, SCI-Phoenix made the Johnson & Johnson vaccine available to the inmates in SCI-Phoenix, and Superintendent Sorber informed the inmates that the lockdown would be lifted once the prison reached "herd immunity." SCI-Phoenix eventually did achieve that status, meaning 80% or more of the prisoners received the Johnson & Johnson vaccine. As a result, the lockdown was lifted in July 2021, and the prison common areas reopened. All prisoners and staff were required to wear a mask. Mr. Walker, however, declined to be vaccinated.

On July 29, 2021, three vaccinated prisoners at SCI-Phoenix tested positive for COVID-19. That same day, Superintendent Sorber directed the unit manager of Mr. Walker's cell-block to go to Mr. Walker's cell and inform him that he would be tested for COVID-19 and quarantined in his cell but that if he refused to be tested, he would be moved out of his cell-block and placed into quarantine isolation. Only unvaccinated inmates, approximately 36 out of the 275 on Mr. Walker's cell-block, were quarantined and told they would be quarantined in isolation if they refused testing. Mr. Walker received a nasal swab test for COVID-19 that was administered by one of the nurses at SCI-Phoenix. After he received the nasal swab, "it felt like something exploded in Mr. Walker's head" and he experienced pain in his head and nostrils. Mr. Walker agreed to the nasal swab only because he did not want to be moved off of his housing block. Two days later, his COVID-19 test came back as negative. During this two-day period, Mr. Walker was allowed out of his cell for one hour each day between the hours of 11:30 a.m. and 12:30 p.m. in order to shower, use the phone, access the kiosk, and recreate in the yard. He was not allowed to use the law library, have any visits, attend school, or leave the housing unit during this time. On August 2, 2021, a doctor

examined Mr. Walker following his complaints about the COVID-19 nasal swab and prescribed him naproxen.[1]

Despite testing negative and only one unvaccinated inmate testing positive (which turned out to be a false positive), Superintendent Sorber refused to release Mr. Walker from quarantine within his individual cell. A few days later, on August 5, 2021, SCI-Phoenix was again locked down in order to move all the unvaccinated prisoners to a separate housing block, R-Unit. Once moved onto R-Unit, Mr. Walker was only allowed out of his cell for 15 minutes in order to shower and then another 15 minutes later in the day to use the phone or kiosk; he was not permitted to go outside to the yard. During this time, R-Unit was locked down on August 18 in order for guards and other staff to do a full search.

Over time, the restrictions decreased. Starting on August 20, prisoners were allowed out of their cells for 90 minutes twice a day and were also allowed to go to the law library for two hours in limited numbers at any one time. On August 26, 2021, prisoners' allotted time out of their cells was increased again to two hours per day twice a day and the prisoners on R-Unit were allowed to access the yard again.

Despite this progress, however, a prisoner in R-Unit tested positive for COVID-19 on December 3, 2021, meaning R-Unit was again placed into lockdown. In addition, Superintendent Sorber ordered that the inmates in this prisoner's cohort were to be given COVID-19 tests and to have their temperature and oxygen level checked twice each day. Mr. Walker had his temperature and oxygen levels checked but refused the nasal swab test for COVID-19. The guards and staff on R-Unit were not quarantined, tested, or monitored and were permitted to continue to move

---

[1] Naproxen is an anti-inflammatory drug "used to relieve symptoms . . . such as inflammation, swelling, stiffness, and joint pain. *Naproxen (Oral Route)*, Mayo Clinic (June 1, 2022), https://www.mayoclinic.org/drugs-supplements/naproxen-oral-route/description/drg-20069820 (last visited Aug. 16, 2022).

throughout the prison. That same day, December 3, 2021, Mr. Walker was put into the segregated housing unit, known colloquially as "the hole," without warning and without reason. On December 7, Mr. Walker consented to a nasal swab COVID-19 test and on December 10, 2021, he was released back to R-Unit. During his time in the segregated unit, no staff member checked his temperature or oxygen level, but staff continued to monitor the other inmates still in R-Unit and, once Mr. Walker returned to R-Unit, staff resumed checking his temperature and oxygen level. Mr. Walker asserts that his time in the segregated unit was retaliation for refusing the COVID-19 test.

On December 16, 2021, Mr. Walker was supposed to visit with an attorney at SCI-Phoenix. However, when he attempted to meet with the attorney he was denied and told that the unvaccinated prisoners in R-Unit were not allowed into the prison's visiting room.

Mr. Walker remains in R-Unit with other unvaccinated prisoners and away from the vaccinated prisoners in the general prison population. As a result of his limited social interactions, including, for example, eating all meals alone in his cell, Mr. Walker alleges that his mental health is deteriorating. Mr. Walker has only had four visits via Zoom and is not permitted to have any physical contact with any visitors, is not allowed to attend his classes through Villanova University offered at SCI-Phoenix, and is not permitted to participate in any of the educational or religious programming offered to other prisoners at SCI-Phoenix. Mr. Walker also alleges that while unvaccinated prisoners are required to remain on R-Unit, guards, both vaccinated and unvaccinated, are permitted to travel freely between R-Unit and the general population of vaccinated prisoners.

Based on these factual allegations, Mr. Walker alleges six counts against the defendants under 42 U.S.C. § 1983: two Fourteenth Amendment Due Process claims, two First Amendment

claims, one Eighth Amendment claim, and one Fourteenth Amendment Equal Protection Claim. The defendants have moved to dismiss Mr. Walker's complaint for failure to state a claim, which Mr. Walker opposes.

## LEGAL STANDARD

In a complaint, a plaintiff must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court does not decide whether the plaintiff's story *is* what happened, only whether it plausibly *could have* happened. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court notes that Mr. Walker's *pro se* pleading should be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). That admonition does not demand that the Court ignore or discount reality, however, even given the indulgent nature of the Court's review of *pro se* pleadings. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (internal quotation marks omitted).

## DISCUSSION

Mr. Walker presents six counts under 42 U.S.C. § 1983 for allegations that he was deprived of certain civil rights guaranteed by the United States Constitution. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Mr. Walker has alleged that various defendants deprived him of his rights under the First, Eighth, and Fourteenth Amendments.

5

Government officials sued pursuant to 42 U.S.C. § 1983, may be sued in his official or individual capacity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, (1985); *Monell v. Dept. of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 690 n. 55, (1978)) (internal quotation marks omitted). Suits against government officers in their official capacity should be treated as suits against the government entity itself. *Hafer,* 502 U.S. at 25. A suit against an officer in his individual capacity, on the other hand, seek to impose personal liability upon the individual officer. *Id.* at 25. Mr. Walker's allegations include both individual capacity and official capacity claims.

For analytical clarity, the Court will address each constitutional basis for a claim within Mr. Walker's complaint separately and will discuss the individual capacity and official capacity distinction within each potential basis for a claim.

## I.    Mr. Walker Has Not Alleged Any Claim Under the Eighth Amendment

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "The Amendment's prohibition on cruel and unusual punishment applies to both an inmate's formal sentence and to 'deprivations that were not specifically part of the sentence, but were suffered during imprisonment.'" *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Eighth Amendment, in part, protects people from punishment that constitutes "unnecessary and wanton infliction of pain." *Wilson*, 501 U.S. at 297.

Construing Mr. Walker's complaint liberally, *Estelle*, 429 U.S. at 106, he appears to allege that the defendants violated his Eighth Amendment rights by (1) administering the July 29, 2021 COVID-19 nasal swab test that caused injury to Mr. Walker, (2) placing Mr. Walker, and all other unvaccinated inmates, into the segregated R-Unit, (3) placing Mr. Walker in the segregated unit

after another unvaccinated inmate in the R-Unit tested positive for COVID-19, and (4) not providing Mr. Walker with certain basic necessities while in R-Unit or in the segregated unit.

### A. **Mr. Walker Failed to State an Eighth Amendment Claim on the Basis of a Nasal Swab COVID-19 Test**

Mr. Walker's first allegation is that the nasal swab test for COVID-19 administered by a nurse violated his Eighth Amendment rights. A prisoner may argue that prison official's use of force against him violated his Eighth Amendment right against cruel and unusual punishment. *Smith v. Mensinger*, 293 F.3d 641, 647–49 (3d Cir. 2002). The "pivotal inquiry" in assessing such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 649 (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)). This involves an analysis of several factors. *See Brooks*, 204 F.3d at 106. But "the Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force." *Smith*, 293 F.3d at 648.

Here, Mr. Walker's Eighth Amendment claim on this basis fails for two reasons. First, the nasal swab COVID-19 test (to which he consented) was a *de minimis* use of force and thus not sufficient to state an Eighth Amendment claim. *See Boreland v. Vaughn,* No. 92-cv-172, 1993 WL 62707, at *6 (E.D. Pa. Mar. 3 1993), *aff'd,* 22 F.3d 300 (3d Cir. 1994) (granting summary judgment finding no Eighth Amendment claim based on injecting an inmate with a needle against his will); *Walker v. James*, No. 03-cv-3541, 2007 WL 210404, at *8 (E.D. Pa. Jan. 23, 2007) (granting motion to dismiss of Eighth Amendment claim based on blood draw DNA sample); *see also Reyes v. Chinnici*, 54 F. App'x 44, 47 (3d Cir. 2002) (finding "[a] single punch to avoid being spit upon" did not assert an Eighth Amendment claim). This alone means that Mr. Walker has not stated a viable claim. Second, as the defendants rightly point out, Mr. Walker has not alleged that any of the named defendants were involved in the July 29, 2021 COVID-19 nasal swab test either

in their individual or official capacities. Mr. Walker has not alleged that the named defendants administered the test directly to Mr. Walker, implemented a policy, practice, or custom of administering nasal swab COVID-19 tests to injure prisoners, or failed to train staff on how to properly administer COVID-19 nasal swab tests. Thus, Mr. Walker has failed to allege any Eighth Amendment claim against any of the named defendants in either their individual or official capacities, and this basis for an Eighth Amendment claim must be dismissed.

**B.   Mr. Walker Failed to State an Eighth Amendment Claim Based on the Segregation of Unvaccinated Prisoners Into a Separate Housing Block of SCI-Phoenix or Mr. Walker's Placement in the Segregated Housing Unit**

Mr. Walker also appears to allege that the quarantine of the unvaccinated prisoners in the R-Unit of SCI-Phoenix violated his Eighth Amendment right to be free from "cruel and unusual punishments." Construing his complaint liberally, as the Court must, Mr. Walker may also be alleging that his placement into the segregated unit for quarantine violated the Eighth Amendment. But neither allegation is sufficient to state an Eighth Amendment violation.

First, Mr. Walker has not alleged that placement in the segregated unit after another inmate tested positive for COVID-19 and he refused testing was a punishment. Instead, Mr. Walker acknowledges that this claim is "speculation." But "[e]ven on a motion to dismiss [the Court is] not required to credit mere speculation." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012). Thus, by the terms of Mr. Walker's own complaint, this allegation is not a viable Eighth Amendment claim.

Likewise, Mr. Walker's claim that moving all the unvaccinated inmates to the R-Unit was punishment is purely speculative. Mr. Walker alleges that the defendants moved all unvaccinated prisoners in order "to punish and retaliate against Mr. Walker and the other unvaccinated prisoners for refusing to accept the J&J vaccine." But Mr. Walker has not alleged any facts supporting this allegation, and the Court "need not accept as true unsupported conclusions and unwarranted

8

inferences." *Doug Grant, Inc.*, 232 F.3d at 184. Just as a Court does not automatically *grant* a motion to dismiss because certain "magic words" are missing from a complaint, a Court also does not automatically *deny* a motion to dismiss because certain conclusory "magic words" are in a complaint. *See Patel v. Dhaduk*, 839 F. App'x 715, 722 (3d Cir. 2020); *Waterfront Renaissance Assocs. v. City of Phila.*, 701 F. Supp 2d 633, 643 (E.D. Pa. 2010).

Because neither of these allegations is sufficient to state an Eighth Amendment claim *ab initio*, the Court will not separately analyze the individual versus official capacity suits under these Eighth Amendment allegations. Therefore, this basis for any Eighth Amendment claim must also be dismissed.

### C. Mr. Walker Failed to State an Eighth Amendment Claim Based on the Conditions of his Confinement in Either R-Unit or the Segregated Unit

Lastly, Mr. Walker alleges that the conditions of his confinement in the R-Unit with the other unvaccinated prisoners violated the Eighth Amendment. Construing his complaint liberally, as the Court must, he also appears to allege that the conditions of his confinement in the segregated unit for seven days in December 2021 violated the Eighth Amendment.

A prisoner may claim that he was denied medical care or that the conditions under which he was imprisoned fell below certain minimum standards. *Wilson*, 501 U.S. at 297–99, 304; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). The standard is the same for prisoners housed in the general population as it is for prisoners in segregated housing. *Wilson*, 501 U.S. at 303; *see Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997); *Loe v. Wilkinson*, 604 F. Supp. 130, 132 (M.D. Pa. 1984). Claims for denial of medical care or conditions of confinement are analyzed under the same two-part test. *Farmer*, 511 U.S. at 837; *Pearson*, 850 F.3d at 534. This involves an objective showing that the prisoner's needs

or medical risks were serious and a subjective showing that the defendant knew of and disregarded those needs or risks. *Farmer*, 511 U.S. at 837; *Pearson*, 850 F.3d at 534.

Starting with the objective portion of the test, prison officials violate the Eighth Amendment when "the deprivation alleged [is] objectively sufficiently serious" and that deprivation "result[s] in the denial of the minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). This means, for example, that prison officials must provide inmates with "adequate food, clothing, shelter and medical care" and must also "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotation marks omitted). When an inmate challenges prison conditions, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. In the context of the more specific claim that an inmate was deprived of necessary medical care, a prisoner must show his medical need is "serious" meaning "it has been diagnosed by a physician as requiring treatment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

Moving to the subjective portion of the test, a prisoner must show that the prison official has a "sufficiently culpable state of mind" meaning one of "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). In other words, the "prison official must both know of *and* disregard an excessive risk to inmate health or safety." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (emphasis added). The mental state requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official *should* have been aware." *Mammana*, 934 F.3d at 373 (emphasis added) (quoting *Woloszyn* 396 F.3d at 321).

### 1. Mr. Walker Failed to Allege that the General Conditions in R-Unit and the Segregated Unit Violated the Eighth Amendment

Mr. Walker's generalized allegations about the conditions in the segregated R-Unit and his week in the segregated unit fails to state a claim. As to his time in R-Unit, he has not alleged that he lacked adequate food, clothing, shelter, or medical care. *Farmer*, 511 U.S. at 832. Thus, this cannot form the basis for an Eighth Amendment claim. *Cf. Anderson v. Lehigh Cnty. Prison*, No. 21-cv-3620, 2022 WL 2791745, at *3 (E.D. Pa. Jul. 14, 2022) ("[A] general complaint that COVID restrictions were onerous – as undoubtedly they were – does not suffice to make out a constitutional violation when one accounts for the need to protect those detained against the virus.")

As to his time in the segregated unit, he alleges generally that his cell was dirty "and appeared to have dry blood on the wall," that he was not given a change of under clothes, and that he did not have his shower shoes. But while a dirty cell may give rise to an Eighth Amendment claim, Mr. Walker's allegations that there appeared to be dried blood on the wall do not. *Cf. Bracey v. Price*, No. 09-cv-1662, 2012 WL 6015727, at *16 (W.D. Pa. Dec. 3, 2012) ("Plaintiff also complains that the toilet in his cell contained feces, and that he was exposed to the smells of feces and urine for three days. . .None of these deprivations or conditions, however, supports an Eighth Amendment claim."); *Milhouse v. Gee*, No. 09-cv-2134, 2011 WL 3627414, at *13 (M.D. Pa. Aug. 17, 2011) (finding "cell conditions to which [inmate-plaintiff] was exposed were temporary in nature, and, although unpleasant, were not sufficient to constitute a constitutional violation"). Likewise, there is no viable Eighth Amendment claim for a lack of shower shoes. *Cf. Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) (finding no Eighth Amendment violation for potential denial of access to razor for a period of between a few and 36 days). And, while Mr. Walker alleges that he did not have clean underwear, that is also not a basis for an Eighth

11

Amendment claim. *Cf. Liles v. Camden Cnty. Dept. of Corrs.* 225 F. Supp. 2d 450, 461 (D.N.J. 2002) ("[L]aundry service is not one of the basic needs required under *Farmer*.").

Therefore, Mr. Walker's generalized allegations about the conditions of his confinement fail to state a viable claim under the Eighth Amendment.

### 2.  Mr. Walker Failed to Allege that He Was Denied Medical Care

Mr. Walker appears to allege that his medical care during his time in the segregated unit was inadequate because he was not having his temperature and oxygen levels checked twice a day like the other unvaccinated prisoners in the R-Unit after another inmate in R-Unit tested positive for COVID-19. But this allegation plainly fails under the objective prong of the two-part test identified above because Mr. Walker has not alleged that he had an objectively serious medical need that any defendants ignored. To be sure, COVID-19 is a deadly virus and anyone infected with it may require medical attention. But Mr. Walker does not allege that he was infected and ignored; instead, he alleges that he was not preemptively *monitored*. But this is not a "serious" medical need because no physician diagnosed Mr. Walker with an illness, let alone a condition requiring treatment. *Atkinson*, 316 F.3d at 266.

Moreover, Mr. Walker's allegations actually suggest that the defendants *did* take numerous steps to ensure his safety. Mr. Walker's allegations as to the segregation of all unvaccinated individual in the R-Unit actually support the notion that the defendants were taking steps to prevent any inmate, vaccinated or unvaccinated, from contracting the COVID-19 virus. Due to the necessarily close and continued contact that prisoners experience, SCI-Phoenix had every reason to attempt to prevent a large-scale outbreak by segregating vaccinated from unvaccinated prisoners and to further protect Mr. Walker from being infected at all, given his unvaccinated status. Apparently the strategy worked: Mr. Walker acknowledges that he has never tested positive for COVID-19 and did not contract the virus.

As a result, Mr. Walker also fails to state a viable Eighth Amendment claim on this basis.

### 3. Mr. Walker Failed to Allege that Periods of Time Without Exercise Violated the Eighth Amendment

Lastly for purposes of his Eighth Amendment claims, Mr. Walker argues that the limited periods of time he was allowed out of his cell to use the phone, kiosk, and the courtyard violated his Eighth Amendment rights because, he argues, outdoor exercise is a basic human need such that the denial of it constitutes deliberate indifference. According to his complaint, Mr. Walker's time outside his cell was variously limited during different periods of time as follows:

- July 29–July 31, 2021: Mr. Walker was allowed out of his cell for one hour each day and had access to the outside yard;
- July 31–August 5, 2021: No information alleged;
- August 5–August 20, 2021: Mr. Walker was moved to R-Unit where he was allowed out of his cell for 15 minutes in the morning to shower and 15 minutes in the afternoon to either use the phone or kiosk and did not have access to the outside yard;
- August 20–August 26, 2021: Mr. Walker was allowed out of his cell for 90 minutes two times a day;
- August 26–December 3, 2021: Mr. Walker was allowed out of his cell for two hours twice a day and had access to the outside yard; and
- December 3–December 10, 2021: Mr. Walker was placed in the segregated housing unit.

The Supreme Court has stated that deprivation of exercise may give rise to an Eighth Amendment conditions-of-confinement claim when it is "in combination" with another condition such that "they have a mutually enforcing effect" on each other. *Wilson*, 501 U.S. at 304; *accord Mammana*, 934 F.3d at 373–74. The Supreme Court compared a case in which the Court of Appeals for the Ninth Circuit found outdoor exercise to be required when the prisoners were confined in their cells almost 24 hours a day and received no time outside to another case in which the Court of Appeals for the Fourth Circuit found that outdoor exercise was *not* required when

13

prisoners had access to the common dayroom for 18 hours a day. *Wilson*, 501 U.S. at 304 (citing *Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir. 1979); *Clay v. Miller,* 626 F.2d 345, 347 (4th Cir. 1980)). Still, limited periods of time without access to exercise or the outdoors do not give rise to an Eighth Amendment claim. *Liles,* 225 F. Supp. 2d at 461 ("Lockdown periods of less than thirty days . . . generally do not violate the Eighth Amendment."). Thus, lack of outdoor exercise *may* give rise to an Eighth Amendment claim in tandem with other specific circumstances, but a lack of outdoor exercise in and of itself does not.

Here, by the terms of his complaint, Mr. Walker has not alleged facts sufficient to state an Eighth Amendment claim for lack of exercise. Mr. Walker only alleges three periods of time during which he was denied exercise and time in the yard: (1) the 15-day period between August 5, 2021 and August 20, 2021 when he was only allowed out of his cell for 15 minutes twice per day and lacked access to the outside yard; (2) the period between August 20, 2021 and August 26, 2021 when he was allowed out of his cell for 90 minutes twice a day, but was still not permitted to access the outside yard; and (3) the period between December 3, 2021 and December 10, 2021 when he was in the segregated unit.

Even taking the entire period together from August 5, 2021 to August 26, 2021, Mr. Walker has only alleged that he was denied extensive time out of his cell and outside exercise for 21 days period during COVID-19 restrictions. This falls within the 30-day period during which lockdowns generally do not violate the Eighth Amendment. *Liles,* 225 F. Supp. 2d at 461. Plus, during the period between August 20 and August 26, Mr. Walker was allowed out of his cell for three hours per day. While perhaps not as much as he desires, Mr. Walker has not alleged that this, in combination with some other condition of confinement, so deprived him of access to basic necessities as to give rise to an Eighth Amendment claim. *Wilson,* 501 U.S. at 304. As for Mr.

Walker's seven days in the segregated unit, that also fails to allege a conditions-of-confinement-claim for the same reasons. *See, e.g., Robinson v. Ricci*, No. 08-cv-2023, 2008 WL 5100309, at *7 (D.N.J. Dec. 1, 2008).

Of course, if the defendants here had done the opposite and *not* placed SCI-Phoenix into some sort of a lockdown to quarantine prisoners from the risks of COVID-19 spreading in the close-quarters of a prison environment, they likely would have opened themselves up to the possibility of a conditions-of-confinement claim on that basis. *See, e.g., Anderson*, 2022 WL 2791745, at *3 n.4 (noting contradictory nature of an Eighth Amendment claim based on onerous lockdowns due to COVID-19 coupled with an Eighth Amendment claim based on failure to protect from COVID-19); *Wholaver v. Wetzel*, No. 22-cv-492, 2022 WL 2052642, at *2-3 (E.D. Pa. June 7, 2022) (finding no Eighth Amendment claim for failure to take steps to protect inmates against COVID-19).

In sum, Mr. Walker has not alleged an Eighth Amendment claim based on any conditions of confinement. Thus, the Court will not separately address the individual versus official capacity claims. Having considered each plausible basis of an Eighth Amendment claim, Count One of Mr. Walker's complaint must be dismissed in its entirety.

## II.   Mr. Walker Has Not Alleged an Equal Protection Claim

In Count Three, Mr. Walker alleges that the defendants' actions separating the unvaccinated inmates from the vaccinated inmates and placing them into the separate R-Unit violated his right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

Under the Equal Protection Clause, "persons who are similarly situated should be treated in the same manner." *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Because the distinctions in this case are between unvaccinated and vaccinated people, which does

"not implicate a suspect or quasi-suspect class, the state action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). In the prison setting, when a "regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The defendants here had a legitimate state interest in keeping the inmates in SCI-Phoenix safe from the COVID-19 virus. Separating those inmates who are unvaccinated, and thus more susceptible to a COVID-19 infection, from those who are vaccinated, and thus less susceptible to a COVID-19 infection, is rationally related to that goal. *Jones v. Cnty. of Allegheny*, No. 21-cv-1094, 2022 WL 2806779, at *7 (W.D. Pa. June 24, 2022) ("Because it is difficult to social distance in a correctional setting, the Court cannot second guess where authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract Covid-19, and those who recover from Covid-19."), *report and recommendation adopted*, 2022 WL 2803111 (W.D. Pa. July 18, 2022). Thus, Mr. Walker has failed to allege any claim under the Equal Protection Clause of the Fourteenth Amendment. The Court will not separately analyze his individual and official capacity claims, and Count Three of Mr. Walker's amended complaint must be dismissed in its entirety.

### III.   Mr. Walker Has Not Alleged a First Amendment Claim

Next, Mr. Walker alleges that the defendants retaliated against him for refusing the J&J COVID-19 vaccine by segregating him in R-Unit away from the vaccinated general prison population in SCI-Phoenix.[2]

---

[2] In Count Six, Mr. Walker alleges that the defendants deprived him of access to his attorney in violation of the First Amendment. Because the Court construes this as a claim for denial of access to the courts and separately addresses this claim, the Court will not address it here.

For a prisoner to state a First Amendment retaliation claim, he must allege "(1) 'that the conduct which led to the retaliation was constitutionally protected'; (2) 'that he suffered some 'adverse action' at the hands of the prison officials'; and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him' or more specifically, that his constitutionally protected conduct was 'a substantial or motivating factor in the decision' to that that action." *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Once the prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that he "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* (quoting *Rauser*, 241 F.3d at 334).

Skipping over the first two parts of this test, Mr. Walker's allegation fails under the third part of the test for causation. That is because, in the context of a prison, "[t]here must be particular facts alleged that allow the court to reasonably infer it is the protected activity itself, and not simply medically relevant behavior associated with that activity, that formed the basis of the defendant's adverse action." *Id.* at 192. Here, Mr. Walker has not shown that the defendants segregated him in R-Unit *because of* his decision not to be vaccinated (*i.e.*, the protected First Amendment conduct or expression) rather than the medical implications of his decision not to be vaccinated (*i.e.*, the risks to himself and others in SCI-Phoenix from remaining unvaccinated). *See id.* (dismissing claim for First Amendment retaliation against prison psychologist for not advancing inmate through treatment program where inmate's frequent litigation was preventing him from full participation in the treatment because "the factual allegation that the psychologist considered the effect his First Amendment activity . . . would not support the inference that retaliation was the 'substantial or motivating factor' for the psychologist's recommendation."). As a result, Count

Four of Mr. Walker's complaint regarding a claim for First Amendment retaliation must be dismissed, rendering discussion of the individual and official capacity claims unnecessary.

## IV.    Mr. Walker Has Alleged a Due Process Claim for the Deprivation of a State-Created Liberty Interest

In Counts Two and Five of his complaint, Mr. Walker alleges that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. In Count Two, he alleges that his quarantine in R-Unit violated his Due Process rights because there is no process by which he can be transferred back to the general population and because it deprived him of the privileges afforded to those inmates in the general population. In Count Five, Mr. Walker alleges that his placement in the segregated unit violated his Due Process rights because he was not placed there for any legitimate reason and was not given notice of the reasons why he was placed there.

A prisoner's procedural due process rights "are triggered by deprivation of a legally cognizable liberty interest." *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003). A protected liberty interest may arise from either the Due Process Clause itself or from a state-created entitlement. *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002). As for the Due Process Clause, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Asquith v. Dep't of Corrs.*, 186 F.3d 407, 410 (3d Cir. 1999). Turning to a state-created liberty interest, such a deprivation occurs "when a prison's action impose[] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" *Mitchell*, 318 F.3d at 531 (quoting *Sandin*, 515 U.S. at 484). If a prisoner had

no protected liberty interest, then the state does not owe that prisoner any process before depriving the prisoner. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Thus, a court must assess a prisoner's conditions of confinement in relation to others "similarly sentenced." *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002); *see Mitchell*, 318 F.3d at 532; *Shoats*, 213 F.3d at 144.[3]

### A. Mr. Walker Has Alleged that His Segregation in R-Unit Deprived Him of a State-Created Liberty Interest

Mr. Walker first alleges that his segregation in the R-Unit of housing violated his Due Process rights because it deprived him of environmental and sensory stimuli, almost all human contact, and many of the privileges afforded to the vaccinated prisoners in the general population. For example, Mr. Walker is currently a student in the Villanova University Bachelor of Arts in Liberal Studies program but has been unable to attend classes since being moved to the R-Unit. In addition, he has not been able to participate in any of the educational or religious programs offered to the general inmate population and has only had limited access to books and reading material, especially because there is no library in R-Unit. Lastly, Mr. Walker has only been allowed to have four zoom visits and has not had physical contact with any visitors.

These facts, however, do not amount to any claim under the Due Process Clause itself. That is because Mr. Walker has not alleged that he was subjected to confinement that either exceeded the sentence imposed on him or that otherwise violated the Constitution. *Fraise*, 283 F.3d at 522. Mr. Walker seems to concede this particular point, focusing his briefing on the state-created liberty interest. For example, Mr. Walker has asserted that he was not permitted to have visitors while on

---

[3] The legal standard for comparison is better stated in *Leamer*, which instructs the Court to compare "the circumstances of [the defendant's] placement with those of others within *comparable confinement*." *Leamer*, 288 F.3d at 546 (emphasis added). *Mitchell* and *Shoats* seem to suggest that the comparison can be done at a more generalized level (*e.g.*, the general population to solitary confinement). *Mitchell*, 318 F.3d at 532; *Shoats*, 213 F.3d at 144. However, the comparison makes the most sense when comparing similarly confined prisoners (*e.g.*, prisoners in solitary confinement to prisoners in solitary conferment or prisoners in the general population to prisoners in the general population). *See Leamer*, 288 F.3d at 546.

R-Unit, but he has not asserted any facts to suggest that this is a right he could reasonably expect to enforce against prison officials. *Ky. Dept. of Corrs.*, 490 U.S. at 464–65 (finding that regulations providing that visitors "may be excluded" "are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials" because they lack the requisite language making the exclusion mandatory). Mr. Walker claims that he had limited access to reading materials, but he has not asserted that he had no access to reading materials. Plus, even if he had, that would not necessarily state a claim under the First Amendment. *See Monroe v. Beard*, 536 F.3d 198, 207–08 (3d Cir. 2008) (concluding that regulations allowing the confiscation of inmates' publications and legal materials did not infringe the inmate's First Amendment rights because there was a "rational nexus" between the prison's interest and its means of achieving that interest through confiscation of certain reading materials). Thus, he has not stated a claim under the Due Process Clause itself.

Mr. Walker has, however, alleged sufficient facts to survive the motion to dismiss regarding a state-created liberty interest. A deprivation of a state-created liberty interest occurs when a prison's action "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Shoats*, 213 F.3d at 143. As the Third Circuit Court of Appeals has explained, cases assessing such claims have "reached differing outcomes" because the inquiry is "fact-specific." *Mitchell*, 318 F.3d at 532. According to Mr. Walker, the deprivation here is that the unvaccinated inmates in R-Unit, including Mr. Walker, were unable to participate in the normal day-to-day activities available at SCI-Phoenix, including educational opportunities, communal eating, religious activities, and general socializing. Meanwhile, the vaccinated inmates were able to participate in the normal day-

to-day activities available at SCI-Phoenix with no deprivations. The only difference between the inmates was that one population was vaccinated, while the other was not.

The defendants argue that numerous cases have rejected similar claims for state-created liberty interests.[4] But the defendants focus exclusively on the length of the segregation rather than the experience of a prisoner in segregation compared to that of a prisoner in the general population. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation insufficient to trigger a Due Process violation); *Torres v. Fauver*, 292 F.3d 141, 150–52 (3d Cir. 2002) (15 days in disciplinary detention and 120 days in administrative segregation not sufficient to state a Due Process claim); *Griffin*, 112 F.3d at 706–08 (no protected liberty interest in avoiding 15-month placement in administrative custody); *Diaz v. Canino*, 502 F. App'x 214, 218–19 (3d Cir. 2012) (360 days in disciplinary segregation did not deprive inmate of protected liberty interest); *Armstrong v. Brooks*, 283 F. App'x 906, 909–10 (3d Cir. 2008) (30 days of cell restriction not enough to state a Due Process violation); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (aggregate 930 days in disciplinary segregation did not state Due Process violation).

While the cases cited by the defendants are analogous at a very general level, Mr. Walker's claim is not that he had a protected liberty interest in remaining out of segregation. Instead, he is claiming that his housing in R-Unit deprived him of access to certain opportunities otherwise generally available at SCI-Phoenix. Because the inquiry regarding the deprivation of a state-

---

[4] The defendants also argue that the Court should defer to prison officials' decisions about housing inmates. Courts afford significant deference to prison administrators in determining where to house inmates. *See, e.g., McKune v. Lile*, 536 U.S. 24, 39 (2002). And a decision to place a prisoner in more restrictive custody that, as a result, deprives him of access to prison programming may not necessarily state a due process claim. *See Padilla v. Beard*, 206 F. App'x 123, 125 (3d Cir. 2006). But this is a different circumstance than the facts alleged here because the inmates were not placed in more restrictive custody. Mr. Walker alleges that the group of unvaccinated prisoners, housed separately, but still in standard communal housing in R-Unit, did not have access to the same opportunities as the vaccinated prisoners, also housed in a general communal housing setting.

created liberty interest is "fact-specific," the Court must look to Mr. Walker's experience in segregated confinement compared to the experience of inmates in the general population to determine whether the segregated confinement "impose[d] atypical and significant hardship" on Mr. Walter "in relation to the ordinary incidents of prison life." *Mitchell*, 318 F.3d at 531.

In a more analogous case, the Court of Appeals for the Third Circuit found that a prisoner had stated a claim for deprivation of a state-created liberty interest based on spending eight years in administrative segregation during which time he was only permitted out of his cell for limited periods of time, ate all meals alone, was prohibited from participating in any education, vocational, or other organizational activities, was prohibited from visiting the library, and was denied contact with his family.[5] *Shoats*, 213 F.3d at 144. Mr. Shoats' eight-year confinement was "unique" compared to inmates in the general population because "only one percent of the inmate population…ha[d] been confined in restricted housing for such [a] lengthy period[] of time." *Id.* This long-term confinement effectively created two groups of "similarly sentenced" inmates that had different experiences in confinement. *Leamer*, 288 F.3d at 546. Mr. Walker similarly alleges that two groups of prisoners "similarly sentenced" experienced very different conditions while at SCI-Phoenix. *Id.* Mr. Walker has, thus, shown that his segregated confinement in R-Unit without access to educational, religious, and vocational opportunities, general socialization, and communal eating "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Mitchell*, 318 F.3d at 531 (quoting *Sandin*, 515 U.S. at 484).

Whether factual discovery will bear out his claim is not for this Court to decide at this stage. Taking all facts as true in Mr. Walker's complaint, and construing them liberally as the

---

[5] While the court ultimately denied Mr. Shoat's claim after concluding that the *procedures* the prison followed in depriving him of that interest were adequate, that does not affect the identified protected liberty interest itself. *Shoats*, 213 F.3d at 144–47.

Court must, he has stated enough facts to make his cause of action for deprivation of a state-created liberty interest plausible on its face. Furthermore, the defendants have not addressed whether this claim should be addressed differently based on Mr. Walker's individual versus official capacity claims. At the motion to dismiss stage, it is the defense burden to show that "no claim has been presented" and that dismissal is warranted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented"). The Court cannot marshal the arguments for the defendants.

### B.  Mr. Walker Has Not Alleged a Due Process Claim Based on his Quarantine Placement in the Segregated Unit

In Count Five, Mr. Walker alleges that his placement in the segregated unit violated his Due Process rights because he was not placed there for any legitimate reason and was not given notice of the reasons he was placed there.

On this basis, unlike his other Due Process claim, Mr. Walker has failed to state a claim. Here, the defendants' cited cases, discussed above, support the proposition that a prisoner does not have a protected liberty interest in remaining free from administrate or disciplinary segregation. *Torres*, 292 F.3d at 150. Plus, as the above-cited cases make clear, the length of Mr. Walker's stint in the segregated unit, seven days, is not enough to state a due process claim. Further, a prisoner does not have a right to "any specific custody status." *Oden v. Caison*, 892 F. Supp. 111, 111 (E.D. Pa. 1995). Finally, Mr. Walker was placed in the segregated housing to quarantine him from the other unvaccinated inmates in R-Unit after another inmate tested positive and Mr. Walker refused to take a COVID-19 test. That does not state a due process claim either. *Walker v. Sims*, No. 20-cv-12803, 2022 WL 279853, at *7 (D.N.J. Jan. 31, 2022).

Therefore, Mr. Walker has failed to state a due process claim on the basis that he spent seven days quarantined in the segregated unit.

## V.    Mr. Walked Has Not Sufficiently Alleged an Access to Courts Claim

In Count Six of his complaint, invoking the First Amendment, Mr. Walker argues that he was deprived of a legal visit with his attorney.[6] And in Count Five of his complaint, alleged under the Due Process Clause of the Fourteenth Amendment, Mr. Walker claims that due to his time in the segregated unit, he was unable to adequately prepare for a settlement conference in a different court case. Because the right of access to the Courts is not clearly delineated in either the Due Process Clause or the First Amendment and because the Court must construe Mr. Walker's complaint liberally, the Court will construe and resolve together these portions of Count Five together with Count Six given that Mr. Walker is arguing that he was deprived of access to the courts.[7]

"[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe*, 536 F.3d at 205. To state a claim, a prisoner must make two showings. First, the prisoner must show that he "suffered an actual injury" meaning that he "lost a chance to pursue a nonfrivolous or arguable underlying claim." *Id.* (internal quotation marks omitted). Second, a prisoner must show that he has "no other remedy that may be awarded as recompense for the lost claim other than in the

---

[6] The cases Mr. Walker cites in support of his argument that the defendants' actions violated the First Amendment are not on point. For example, Mr. Walker does not allege that he was deprived the right to hire an attorney. *Cipriani v. Lycoming Cnty. Hous. Auth.*, 177 F. Supp. 2d 303, 324 (M.D. Pa. 2001). Nor does he allege that the defendants imposed any content-based restriction that restricted his attorney's speech. *Sturm v. Clark*, 835 F.2d 1009, 1013–16 (3d Cir. 1987). Thus, the Court declines to address this claim further.

[7] *See Rivera v. Monko*, 37 F.4th 909, 924, 924 n.3 (3d Cir. 2022) (Phipps, J., concurring) (explaining that the "precise source of the right" of "access to the courts" is "unsettled"); *Monroe*, 536 F.3d at 205 (housing the right of access to the courts in the First and Fourteenth Amendments).

present denial of access suit." *Id.* (internal quotation marks omitted). The complaint must, therefore, "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and [ ] describe the 'lost remedy' in such a way that the defendants are on fair notice of it." *Rivera v. Monko*, 37 F.4th 909, 916 (3d Cir. 2022) (quoting *Monroe*, 536 F.3d at 205–06).

Here, Mr. Walker has not met these requirements. First, Mr. Walker alleges that due to his quarantine between December 3 and December 10, 2021, he was unable to properly prepare for a settlement conference scheduled with the Magistrate Judge and had to attend the conference from the segregated unit without access to any the paperwork or legal materials he needed for that conference. But Mr. Walker has not alleged that he lost the chance the pursue this claim. He acknowledges that he still attended the conference. And he has not identified how his lack of access to his materials injured him in connection with the settlement conference. Mr. Walker has also not alleged that he has no other remedy. And finally, Mr. Walker has neither identified the name and case number of that particular case, nor described the underlying arguable claim to show it was more than mere hope. *Rivera*, 37 F.4th at 916. Second, Mr. Walker alleges that he was deprived access to his attorney while in the R-Unit. But Mr. Walker has neither alleged an injury, nor has he alleged that he has no other remedy available as a result of this missed meeting. *Monroe*, 536 F.3d at 205. Plus, he has not identified any case or claim to which this meeting particular meeting with his attorney pertained. *Rivera*, 37 F.4th at 916. Armed with more specific factual allegations, Mr. Walker may be able to make a claim for deprivation of access to the courts, but on the facts pled thus far, he has failed to state a viable claim.

## CONCLUSION

The Court grants the motion to dismiss Counts One, Three, and Four in full. Likewise, the Court grants the motion to dismiss Count Five insofar as it alleges a Due Process violation for Mr. Walker's time quarantined in the segregated unit. Finally, the Court grants the motion to dismiss

Counts Five and Six of Mr. Walker's complaint construed to allege an access to the courts claim.

The Court denies the motion to dismiss Count Two of Mr. Walker's complaint insofar as it alleges

a claim for the deprivation of a state-created liberty interest. An appropriate order follows.


BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE