IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN T. WALKER,<br>          **Plaintiff,** | CIVIL ACTION |
| v. | |
| JAIME SORBER et al.,<br>          **Defendants.** | NO.  21-3477 |

<u>MEMORANDUM</u>

HODGE, J.                                                                                                    September 26, 2024

## I.      INTRODUCTION

Shawn Walker ("Plaintiff") filed suit against Defendants Jaime Sorber, former Superintendent of SCI Phoenix, John E. Wetzel, former Secretary of the Pennsylvania Department of Corrections, and George Little, former Secretary of the Department of Corrections, alleging that SCI Phoenix's responses to the COVID-19 pandemic violated his constitutional rights. (*See generally* ECF No. 21.)

Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (ECF No. 51.) Plaintiff opposes the Motion. (ECF No. 56.) For the reasons set forth below, the Court grants Defendants' Motion.

## II.     BACKGROUND[1]

Defendants previously moved to dismiss Plaintiff's Second Amended Complaint, arguing that none of the allegations state a claim upon which relief can be granted. (ECF Nos. 27, 28.) The Court granted Defendants' motion to dismiss in part, finding that Plaintiff plausibly alleged a claim for the deprivation of a state-created liberty interest based upon the prison's decision to segregate

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Plaintiff in the R-Unit along with other unvaccinated inmates. (ECF No. 38.) The detailed factual background provided within that Opinion is incorporated by reference. (*Id.* at 1–5.) Plaintiff alleges that this decision violated his Due Process rights because it deprived him of environmental and sensory stimuli, almost all human contact, and many of the privileges afforded to the vaccinated prisoners housed in the general population. (ECF No. 21-1 at ¶ 147.) The Court held that although Plaintiff's allegations do not amount to any claim under the Due Process Clause, they are sufficient to allege a deprivation of a state-created liberty interest, which occurs when a prison's action "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (ECF No. 38 at 18–19 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995).)

Defendants argue that they are entitled to summary judgment as to Plaintiff's sole remaining claim under the Prison Litigation Reform Act ("PLRA") because Plaintiff failed to properly exhaust available administrative remedies. (ECF No. 51.) Defendants also argue that Plaintiff was provided procedural due process because he was given notice and opportunity to be heard, and he did not suffer atypical and significant hardship in relation to the ordinary incidents of prison life. Moreover, Defendants assert that any official capacity claim is barred by immunity, and there is no evidence they were personally involved with the daily execution of the directive to house unvaccinated inmates separately. (*Id.*) [2]

Plaintiff responds that his segregation was unjustified since he tested negative for COVID-19 and therefore Defendants' Motion should be denied. (ECF No. 56 at 5–6.) Plaintiff also argues that Defendants denied him access to the grievance policy by confining him to his cell, so

---

[2] Because the Court finds that Plaintiff failed to properly exhaust available administrative remedies, it need not reach the additional arguments set forth in Defendants' summary judgment motion.

Defendants cannot now claim that he failed to exhaust by failing to follow the grievance policy. (*Id.* at 4–5.) Additionally, Plaintiff asserts that his claims should not be dismissed because he only seeks compensatory and punitive damages against them in their individual capacities, not official capacities. (*Id.* at 8–9.) Finally, Plaintiff argues that Defendants were personally involved in the creation of segregated housing units, maintaining them, and transferring unvaccinated prisoners from the general population into those units. (*Id.* at 9–10.)

## III. LEGAL STANDARD

A motion for summary judgment must be denied unless the moving party is able to show "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is defined as one in which a jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). In assessing materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the defendant moves for summary judgment, "the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The summary judgment standard requires the court to view the evidence in the light most favorable to the non-moving party, including all justifiable inferences. *Anderson,* 447 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 248. If the court finds

that any factual issues exist that could be reasonably resolved for either party, and thus requires the presence of a fact finder, then summary judgment must be denied. *Id.* at 250.

## IV.   DISCUSSION

The PLRA provides, in relevant part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). This exhaustion requirement is mandatory, *Porter v. Nussle*, 534 U.S. 516 (2002), and to satisfy this requirement, a prisoner plaintiff must "properly exhaust" in accordance with the applicable procedural rules of the prison grievance process, *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). Claims that have not been properly exhausted may not be considered by the courts. *Jones v. Bock*, 549 U.S. 199, 211 (2007). In the Third Circuit, "failure-to-exhaust" is an affirmative defense with two distinct stages. *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019). "The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies." *Id.* (citing *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007)). If Defendants make this showing, then Plaintiff "bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *Id.* (citing *Rinaldi*, 904 F.3d at 268).

The DOC has an Inmate Grievance System that provides an administrative procedure through which inmates can seek resolution of problems and remedies, including monetary relief. The grievance policy requires inmates to "identify individuals directly involved in the events . . . [and] [i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." (ECF No. 51-5 at 11.) Plaintiff has filed many grievances, but according to Defendants, only one grievance—No.

4

939650—is relevant to the remaining claim. (ECF No. 51-2 at 8.) This grievance, which is attached to the Motion as Exhibit C, states:

> At SCI Phoenix I was housed on F Unit Section B cell 2020. I believe because I refused to take the J+J Vaccine for Covid 19 that the D.O.C. is offering to its prison population, I was forced to move out of my cell and off the housing unit. I was moved to R-unit section A and put in cell 2020. The cell is dirty, the floor appears to be covered with some type of mold, the electrical sockets do not work and the mirror on the wall has been defaced. This treatment I have been subjected to and conditions force [sic] to live in, is a violation of several of my federally protected rights. I have no covid-19 symptoms, my covid-19 test results came back negative and I have done nothing wrong. At this time I am seeking a return to the general population where I was housed, F-unit Section B cell 2020.

(ECF No. 51-7 at 2.) The Defendants argue that this grievance does not adequately raise the substance of the claim before this Court, which focuses on the relative conditions and privileges in the unvaccinated housing unit as compared to the general population. (ECF No. 51-2 at 8.) They also argue that even if the above grievance sufficiently describes Plaintiff's disparate treatment claim, it does not comply with DOC grievance policy because it fails to identify Defendants Sorber, Little, or Wetzel, nor does it request any monetary damages. (*Id.* at 3.)

Plaintiff does not dispute that Grievance No. 939650 is the only relevant grievance. (*See generally* ECF No. 56.) Rather, he argues that if the Court determines that he failed to properly exhaust, he only did so because Defendants' own actions inhibited his ability to file a proper grievance because "the grievance policy was only accessible at the prison's library." (ECF No. 56 at 4.) Thus, Plaintiff concedes the first "failure-to-exhaust" prong and instead focuses on trying to meet his burden of showing that the grievance process was in fact unavailable to him.

There are three situations in which an administrative remedy, although "on the books," is not available for the inmate to use to obtain relief. *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently

5

unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Finally, a procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. It appears that Plaintiff's argument that being in R block prevented him from properly filing a grievance falls somewhere in the second and third categories.

The record reflects that not only does DOC have an inmate grievance system, but that Plaintiff filed several grievances in 2021 before and after being transferred to R Block, including one on the day he was moved.[3] (ECF No. 57 at 3 (citing ECF No. 51-6).) Further, Plaintiff's argument that he did not have access to the law library where the policies are kept is belied by his own allegations in the Amended Complaint that prisoners were allowed to go to the law library on a limited basis and that there was a computer in R Block on which he could access the policy. (ECF No. 21-1 at ¶¶ 52–53.) Plaintiff does not allege that he asked for a copy of the policy and was denied. He is also no stranger to the grievance process. *See Walker v. Wetzel*, 2022 WL 17650456, *1 (E.D. Pa. Dec. 13, 2022) ("Mr. [Shawn T.] Walker filed 22 grievances with the prison pursuant to the grievance process . . .."). In short, Plaintiff has not produced sufficient evidence that the on-the-books grievance process was in fact unavailable to him, so his failure to

---

[3] This fact also undermines Plaintiff's procedural due process claim. The essential requirements of a procedural due process claim are notice and opportunity to be heard. *Zappan v. Pa. Bd. Of Prob. & Parole*, 152 Fed. Appx. 211, 220 (3d Cir. 2005). Plaintiff was informed by a corrections officer that he was being moved to R Block because he was unvaccinated, so he filed a grievance protesting that move on the same day. (ECF No. 51-9 at 13:15–18:14.) The fact that Plaintiff was provided an explanation and had access to the grievance process satisfies due process. S*ee Tillman v. Lebanon Cnty Correctional Facility*, 221 F.3d 410 (3d Cir. 2000); *Kanu v. Lindsey*, 739 Fed. Appx. 111 (3d Cir. 2018).

file a procedurally compliant grievance cannot be excused. Plaintiff's remaining claim is dismissed for failure to exhaust.

## V.      CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**
**HODGE, KELLEY B., J.**